UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

GLENN C. ELFE,

                        Plaintiff,                  No. 22-CV-9385

      -against-

                                          COMPLAINT

                                          Jury Demanded

26 MOTORS CORP.,
JOHN DOE #1 a/k/a "KYLE",
JOHN DOE #2 a/k/a "CHINO",
JOHN DOE #3 a/k/a MANAGER,
WELLS FARGO BANK, N.A.,
L.J. MARCHESE CHEVROLET, INC., and
MICHELLE BAILEY,

                        Defendants.
_____x

## Introduction

1.     This is a suit brought by a consumer, Glenn C. Elfe, against automobile dealerships, 26 Motors Corp. and L.J. Marchese Chevrolet, Inc., and their officers, agents, and employees, that sold him a motor vehicle with a loan agreement only to later prepare an altered and forged sales-and-loan agreement, which they assigned to Wells Fargo Bank, N.A. The forged-and-altered sales-and-loan documents increased the purchase price from the advertised-and-agreed price of $69,950 to $90,695. In addition, despite the vehicle coming with a New York Motor Vehicle Safety Inspection slapped on it, it could not in fact pass such a safety inspection, as the brakes were nearly inoperable. Plaintiff asserts federal claims

1

under the Fair Credit Reporting Act ("FCRA"), the Equal Credit Opportunity Act, and the Magnuson Moss Warranty Act ("Mag Moss"), and further asserts state-law claims for declaratory relief and for common-law fraud, breach of warranty, and violations of New York General Business Law §§ 349 and 350.

## Parties

2.      Plaintiff is a resident of Westbury, New York.

3.      Defendant 26 Motors Corp. ("26 Motors") is a New York corporation with its principal place of business, a car dealership, located at 3981 Boston Road, Bronx, New York 10466, and has been at all times relevant to this matter a dealership engaged in the business of purchasing and selling motor vehicles in the State of New York.

4.      26 Motors is a domestic corporation registered with the New York Secretary of State.

5.      26 Motors was, at all times relevant to this Complaint, a "creditor" as defined by 15 U.S.C. § 1691a(e).

6.      Defendant L.J. Marchese Chevrolet, Inc. ("Marchese") is an automobile dealership located at 1018 Route 9 West, Fort Montgomery, New York 10922, and has been at all times relevant to this matter a dealership engaged in the business of purchasing and selling motor vehicles in the State of New York.

7.      Marchese is a domestic corporation registered with the New York Secretary of State.

2

8.     Marchese was, at all times relevant to this Complaint, a "creditor" as defined by 15 U.S.C. § 1691a(e).

9.     In taking the actions described below, 26 Motors acted as agent for, on behalf of, and in complicity with Marchese.

10.    Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a national banking association.

11.    Wells Fargo is authorized to do business in the State of New York, and transacts business in the State of New York.

12.    Wells Fargo provides automobile loans and loan servicing nationwide, including in the state of New York.

13.    Wells Fargo is, upon information and belief, assignee of certain contracts with Marchese as discussed below.

14.    To the extent Wells Fargo is not liable in its own right, Wells Fargo is liable as an assignee (e.g., pursuant to 16 CFR § 433.2, N.Y. Pers. Prop. Law § 302.9(a), the Retail Installment Contract ("RIC") between Plaintiff and the Marchese, and other applicable law) and/or based on agency principles.

15.    Defendant JOHN DOE #1 a/k/a "KYLE" ("Kyle") is an employee of Defendant 26 Motors and has his principal place of employment at 3981 Boston Road, Bronx, New York 10466.

16.    Defendant Kyle's actions described herein were undertaken both in his capacity as agent for Defendants 26 Motors and Marchese and in his individual capacity.

3

17.     Defendant JOHN DOE #2 a/k/a "CHINO" ("Chino") is an employee of Defendant 26 Motors and has his principal place of employment at 3981 Boston Road, Bronx, New York 10466.

18.     Defendant Chino's actions described herein were undertaken both in his capacity as agent for Defendants 26 Motors and Marchese and in his individual capacity.

19.     Defendant JOHN DOE #3 a/k/a MANAGER ("Manager") is an employee of Defendant 26 Motors and has his principal place of employment at 3981 Boston Road, Bronx, New York 10466.

20.     Defendant Manager's actions described herein were undertaken both in his capacity as agent for Defendants 26 Motors and Marchese and in his individual capacity.

21.     Defendant Michelle Bailey ("Bailey") is an employee of Defendant Marchese and has a principal place of employment at 1018 Route 9 West, Fort Montgomery, New York 10922.

22.     Defendant Bailey's actions described herein were undertaken both in her capacity as agent for Defendants 26 Motors and Marchese and in her individual capacity.

## Jurisdiction and Venue

23.     This court has federal question jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 1681n, 15 U.S.C. 1681o, 15 U.S.C. § 1691e, 15 U.S.C. § 1679g.

4

24.     This Court has supplemental jurisdiction under 28 U.S.C § 1367(a).

25.     This court has jurisdiction over the Defendants 26 Motors and Marchese, because they are residents of New York.

26.     This court has jurisdiction over the Defendants Kyle, Chino, Bailey and Manager, because they do and transact business in New York.

27.     This court has jurisdiction over the Defendant Wells Fargo, because it does and transacts business in the State of New York and is authorized to do business in New York.

28.     Venue is proper in this district under 28 U.S.C. § 1391(b), as the acts and transactions that gave rise to this action occurred, in substantial part, in this district.

29.     Venue is also proper in this district because the defendants transact business in this district and the interests of justice require maintenance of this action in this district.

## Facts

30.     In early August 2021, Plaintiff was looking for a newer model Porsche to purchase in exchange for the Porsche he then owned.

31.     Plaintiff therefore searched on the internet to look for Porsche for sale.

32.     Plaintiff saw a 2018 Porsche advertised by 26 Motors on Car Gurus (the "advertisement").

33.     In the advertisement, the vehicle was being offered for $72,600.

5

34.     Unknown to Plaintiff, however, 26 Motors had no intention of honoring that advertised price.

35.     In fact, the advertisement, which was for a used 2018 Porsche with 31,690 miles on it, and which was advertised online in August, 2021, had an expiration date 2 years earlier, on October 1, 2019.

36.     In addition, despite advertising a set price for the vehicle in order to lure customers in, in the fine print of the advertisement, 26 Motors purported to reserve to itself the ability to change the price without notice.

37.     Relying on the advertisement, Plaintiff called 26 Motors and spoke to Mariel.

38.     Plaintiff wanted to verify that the vehicle was still available and that the price was as advertised at $72,600.

39.     Mariel confirmed that the vehicle was available, and that the advertised price was still valid.

40.     Plaintiff, therefore, went to the 26 Motors dealership, located at 3981 Boston Road, Bronx, New York, on August 25, 2021.

41.     When Plaintiff arrived at the dealership, he spoke to Mariel, who directed him to deal with Jonathan, who was held out to be a salesperson.

42.     Plaintiff showed Jonathan the advertisement and Jonathan confirmed that the vehicle was for sale at that price.

43.     Plaintiff agreed to purchase the vehicle for the $72,600 purchase price.

6

44.     26 Motors then had Plaintiff meet with Kyle to handle the financing of the transaction.

45.     Kyle presented Plaintiff with a Buyer's Order, loan documents, and other incidents of sale.

46.     The documents Kyle presented to Plaintiff had a vehicle price of $72,600.

47.     Plaintiff electronically signed the Retail Vehicle Invoice, Retail Installment Sales Contract and other sale documents which Kyle presented to him, with a vehicle price of $72,600, paid his $15,000 down payment, signed over the title to his trade in vehicle, and got in his newly purchased car to drive home. A copy of the receipt for the $15,000 down payment is attached hereto as Exhibit 1.

48.     As part of the transaction, 26 Motors assigned its interest in the loan to Wells Fargo Auto.

49.     As Plaintiff was about to leave the dealership, Chino stopped him and told him there was a problem, and that he could not take the car; instead, he was told he had to come back in and talk to another manager.

50.     Chino asked Plaintiff for his copy of the sales paperwork, which was in a closed manilla envelope.

51.     Plaintiff complied, gave Chino the folder with the sales paperwork and re-entered the dealership.

52.     Chino led Plaintiff into a room with another manager.

7

53.    Chino and the other manager indicated that there had been a mix-up in the paperwork, and that they would return shortly.

54.    Chino and the other manager left the room.

55.    Approximately 30 minutes later, Chino and the other manager returned, handed the same envelope back to Plaintiff, and told him that everything is fine, he can leave.

56.    Plaintiff assumed that the envelope contained the same paperwork as he had earlier signed.

57.    Unknown to Plaintiff at the time, however, Chino and the other Manager had swapped the paperwork for new paperwork which increased the vehicle sale price from $72,600 to $90,695. A copy of the Retail Vehicle Invoice is attached as Exhibit 2, a copy of the Retail Installment Sales Contract is attached as Exhibit 3, and a copy of the Assignment and Assumption Agreement is attached as Exhibit 4.

58.    26 Motors had apparently decided that their language in the ad that the "Pricing of vehicles are subject to change without notice" authorized them to change the price post-sale.

59.    In addition, the new paperwork changed the selling dealership from 26 Motors to Marchese, and changed the salesperson from Jonathan to Michelle Bailey.

60.    Plaintiff has never met or dealt with Michelle Bailey and has not dealt with Marchese at all.

8

61.     On information and belief, Marchese and Bailey knew that 26 Motors, Chino and the second manager had used Marchese and Bailey's identities and information in altering the contract terms.

62.     Despite these alterations to the contract documents, Defendants had left some holes in their changes.

63.     Specifically, they forgot to alter the sales tax to fully hide their alterations.

64.     The sales tax rate is correctly shown as Nassau 8.6250%.

65.     The sales tax charged on the Retail Vehicle Invoice is $6,261.51.

66.     A sales tax of 8.6250% on $72,600 is $6,621.75.

67.     A sales tax of 8.6250% on $90,695 would be $7,822.44

68.     Plaintiff did not open the envelope, as he assumed that it was the same documents he had already signed and had given to Chino and the other manager.

69.     Plaintiff first discovered the alterations when he received a loan statement from Wells Fargo, showing $87,357.51 was owed.

70.     Plaintiff then opened the envelope and discovered the altered transaction documents.

71.     Plaintiff then contacted Kyle from 26 Motors to seek answers regarding why the documents had been altered and why the price was approximately $18,000 more than had been agreed upon.

72.     Kyle claimed that the price increase was due to Plaintiff's credit: "As I explained in detail the day we met that the 74950 tier one offer was for tier one

9

credit approvals but even they come with associated pass through costs …" A copy of Kyle's text is attached as Exhibit 5.

73.     In fact, Kyle had not advised Plaintiff of any price increase, the advertised and agreed upon price was $72,600, and the documents Plaintiff signed reflected this price.

74.     In his text, however, Kyle admitted that the dealership did not intend to sell the vehicle for the price agreed upon, and also admitted that they increased the vehicle price due to credit – thus, the PRINCIPAL amount financed was increased on finance transaction, resulting in a hidden finance charge that is not disclosed on the Retail Installment Sales Contract.

75.     Previous to and in connection with the sales transaction, 26 Motors and Marchese obtained an extension of credit for Plaintiff, provided Plaintiff advice or assistance in connection with an extension of credit, *to wit*, the Retail Installment Sales Contract previously referenced as <u>Exhibit 3</u> and incorporated herein by reference.

76.     On information and belief, Marchese did not have an interest in the vehicle.

77.     On information and belief, 26 Motors listed Marchese as the seller in order to utilize financing companies available to Marchese that were not available to 26 Motors.

78.     Marchese authorized 26 Motors to use their name as the seller in the transaction.

79.     Bailey authorized 26 Motors to use her name as the salesperson in the transaction.

80.     At the time of the sale, Marchese had a course of dealing and practice of authorizing 26 Motors and other dealerships to sell vehicles in Marchese's name.

81.      At the time of the sale, there were no notices, divisions, markers or other boundaries or consumer advisements to alert consumers that there was any car dealer at 3981 Boston Road, Bronx, New York, other than 26 Motors.

82.     On information and belief, Marchese did not keep any inventory at 3981 Boston Road, Bronx, New York.

83.     On information and belief, Marchese did not have a lease at 3981 Boston Road, Bronx, New York.

84.     On information and belief, Marchese had a pattern and practice of allowing other dealers, including 26 Motors, to use Marchese's name in sale.

85.     On information and belief, when 26 Motors used Marchese's name in sales to customers, 26 Motors did not disclose to the consumers that the vehicle was coming from a different car dealer and a different legal entity.

86.     On information and belief, when 26 Motors used Marchese's name in sale to consumers, 26 Motors did not transfer the title between 26 Motors and Marchese.

11

87.     In other words, 26 Motors would keep an open title and not appear in the title history of the vehicle, instead only listing Marchese on the title history.

88.     At the time of the sale transaction on August 24, 2021 referenced above, Marchese did not have the title to the vehicle assigned to it.

89.     Thus, with the knowledge, cooperation and acquiescence of Marchese, 26 Motors created an illusory transaction, which named Marchese as the selling dealership, in order to circumvent both their contract prohibitions with finance companies and the restrictions of the Fair Credit Reporting Act regarding accessing Consumer Reports.

90.     The involvement of Marchese in the sale of the vehicle constituted unlawful criminal acts under New York law.

91.     Under the New York State Department of Motor Vehicles' "Motor Vehicle Dealers & Transporters Regulations", it is an unlawful criminal act for a motor vehicle dealership to sell another motor vehicle dealership's cars.

92.     A copy of the "Motor Vehicle Dealers & Transporters Regulations" is attached as Exhibit 6.

93.     Under § 78.8 of the Regulations, sales must be at the dealership, not elsewhere.

94.     Here, 26 Motors and Marchese coordinated with each other to set the deal up with Marchese appearing as the selling dealership—selling the car from 26

Motor's dealership lot.  The entire deal structure was thus in violation of §78.8 of the Regulations

95.     Defendants cannot claim that the negotiation and purchase of the motor vehicle at 26 Motors was a "courtesy delivery" within the meaning of § 78.10(e) of the Regulations, because the vehicle was not "sold by another dealer" – it was sold at the premises of 26 Motors by the 26 Motors Defendants.

96.     Under § 78.11(a)(12) of the Regulations, Marchese and 26 Motors were required to record the complete chain of title – in other words, before the 26 Motors could scam Plaintiff by selling him Marchese's motor vehicle, it was required to take title to the car and record its mileage.

97.     Under § 78.16(c) of the Regulations, "A dealer shall not display or permit the display of a vehicle unless he owns the vehicle or has it on consignment."

98.     Defendants 26 Motors and Marchese sell cars and provide financing to consumers at large.

99.     26 Motors and/or Marchese assigned their interest in the RISC to Wells Fargo.

100.    On information and belief, Wells Fargo accepted the assignment of the loan documents from 26 Motors and/or Marchese.

101.    Under the contract, the UCC, and the "FTC abolition of the holder-in-due-course rule" that was a part of the loan contract, Wells Fargo financed the transaction subject to all claims and defenses that Plaintiff had related to the

underlying transaction, and was liable for all of the plaintiff's claims against 26 Motors and Marchese, up to the amounts paid and owed in the transaction.

102.    Plaintiff is not the only victim of 26 Motors and Marchese's fraudulent-and-deceptive conduct.

103.    As set forth above, Defendants Kyle, Bailey, Chino and Manager actively, willfully, intentionally, and personally participated in the unlawful actions taken against Plaintiff.

104.    In addition, after the sale, Plaintiff discovered that the brakes on the vehicle were worn out and needed replacement.

105.    The vehicle should not have passed a Safety Inspection with the brakes in the condition they in which they were sold.

106.    The vehicle was sold with an express warranty that it was "in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery."

107.    The vehicle was also sold with the implied warranty of merchantability.

108.    As a result of the defective brakes, the vehicle was not safe to drive.

109.    As of the defective brakes, the car was not conforming to the representations and warranties.

110.    It cost not less than $2,000 to repair the brakes.

### Count I
### Fair Credit Reporting Act Violations by 26 Motors

14

111.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

112.    26 Motors' refusal to extend credit in accordance with the first retail installment sales contract was an "adverse action" within the meaning of the FCRA, 15 U.S.C. § 1681a(k).

113.    26 Motors failed to provide the notice of adverse action required by the FCRA, 5 U.S.C. § 1681m.

114.    For its willful violation of the FCRA, 26 Motors' is liable to Plaintiff for her actual damages or statutory damages of between $100 to $1,000, punitive damages, and reasonable attorney fees under 15 U.S.C. § 1681n.

115.    In the event that the FCRA violation is determined to be negligent rather than willful, 26 Motors' is liable to Plaintiff for her actual damages and reasonable attorney fees under 15 U.S.C. § 1681o.

### Count II
### Equal Credit Opportunity Act Violations by 26 Motors

116.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

117.    26 Motors' refusal to extend credit in accordance with the first installment sales contract was an "adverse action" within the meaning of ECOA, 15 U.S.C. § 1691(d).

15

118.    26 Motors failed to provide the notice of adverse action required by ECOA, 15 U.S.C. § 1691(d)(2).

119.    For its violations of ECOA, 26 Motors is liable to Plaintiff for actual damages, punitive damages of up to $10,000, and reasonable attorney fees under 15 U.S.C. § 1691e.

## Count III

### Violations of MVRISA, N.Y. PERS. PROP. LAW §§ 301–16

120.    Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

121.    Plaintiff is a "retail buyer" within the meaning of MVRISA § 301(2).

122.    Defendants 26 Motors and Marchese are "retailer sellers" within the meaning of MVRISA § 301(3).

123.    The transactions as described herein involved "retail instalment sales" within the meaning of MVRISA § 301(4).

124.    As set forth above, Plaintiff was not provided with clear and conspicuous loan disclosures.

125.    In addition, to the extent disclosed, the relevant loan terms were materially misstated.

126.    Pursuant to § 302(5), MVRISA incorporates all Truth in Lending Act (TILA) disclosure requirements.

127.    In addition, Plaintiff was not provided a contract identified as a "Retail Installment Contract (RIC)," in accordance with MVRISA § 302, at the time of the sale or at any time reasonably thereafter.

128.    In addition, as set forth above, the RIC's failed to clearly and conspicuously identify the creditor required to make disclosure.

129.    Defendants 26 Motors and Marchese's violations of MVRISA were willful, as evidenced at least by unwillingness to send Plaintiff the RICs and then refusing to correct it on Plaintiff's request.

130.    For all of the reasons stated herein, including 26 Motors and Marchese's failure to correct the RICs, under MVRISA § 307, Plaintiff is permitted to recover from Defendants 26 Motors and Marchese any credit service charge, delinquency, or collection charge she has paid as a result of these transactions.

131.    Plaintiff is also entitled to injunctive relief barring Defendants 26 Motors and Marchese from henceforth violating MVRISA as set forth above.

132.    By extension, Defendant Wells Fargo is liable for these same violations, as the eventual holder of the finance agreement Defendants 26 Motors and Marchese entered into without Plaintiff's consent.

## Count IV

### Common Law Fraud Violations
### against all Defendants

133.    Plaintiff restates, realleges, and incorporates by reference all foregoing paragraphs as if set forth fully in this Cause of Action.

17

134.   26 Motors' agents, including Kyle, Chino and Manager, but not limited to intentionally, recklessly and/or negligently made misrepresentations to Plaintiff regarding the price of the car, and the amount Plaintiff would be financing to purchase the car.

135.   26 Motors then, by and through its agents, including but not limited to 26 Motors, and without Plaintiff's knowledge, created loan documents containing different terms from those agreed upon.

136.   26 Motors acted in concert with Marchese and Bailey in connection with the fraudulent actions described herein.

137.   Marchese and Bailey authorized 26 Motors to act on their behalf in this transaction.

138.   Marchese ratified 26 Motors' fraudulent actions.

139.   Bailey ratified 26 Motors' fraudulent actions.

140.   Without Defendants' false representations, Plaintiff would not have purchased the vehicle.

141.   Plaintiff has been actually damaged by Defendants' false representations by being stuck with a loan that he did not agree to.

142.   Plaintiff reasonably relied on Defendants' misrepresentations and was induced to purchase the aforementioned automobile.

18

143.    The Defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

144.    Wells Fargo is liable for 26 Motors and Marchese's violations of state law pursuant to the FTC Holder Rule and the terms of the contract.

## Count V

### Declaratory Relief against 26 Motors, Marchese, and Wells Fargo

145.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

146.    Plaintiff is entitled to a court order declaring that the fraudulent loan agreement between Plaintiff, 26 Motors, Marchese, and Wells Fargo is null and void, requiring 26 Motors, Marchese and Wells Fargo to release Plaintiff from any obligations under that agreement and to stop any negative reporting to credit agencies regarding the loan.

## Count VI

### Breach of Warranty
### As to 26 Motors and Marchese and Wells Fargo

147.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

148.   Plaintiff is a "consumer" as defined in 15 U.S.C. §2301(3).

149.   26 Motors is a "supplier" & "warrantor" as defined in 15 U.S.C. §2301(4) and (5).

150.   Marchese is a "supplier" & "warrantor" as defined in 15 U.S.C. §2301(4) and (5).

151.   The vehicle is a "consumer product" as defined in 15 U.S.C. §2301(1).

152.   26 Motors and Marchese representation that was "in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery" was an express written warranty regarding the vehicle.

153.   26 Motors and Marchese have breached their express warranties, and their actions, therefore are in violation of the Consumer Product Warranty Act (15 U.S.C. §2301, et seq.), pursuant to 15 U.S.C. §2311(d)(1).

154.   In addition, 26 Motors and Marchese have breached their implied warranty of merchantability and are therefore in violation of the Magnuson-Moss Warranty Act, pursuant to 15 U.S.C. §2310(d)(1).

155.   As a consequence of 26 Motors and Marchese's breach of warranties and violation of the Magnuson-Moss Warranty Act, the Plaintiff has suffered damages, and is entitled to recover damages under 15 U.S.C. §2310(d)(1).

156.   Plaintiff is also entitled to recover attorney fees pursuant to 15 U.S.C. §2310(d)(2).

157.    Wells Fargo is liable for 26 Motors and Marchese's breach of warranty pursuant to the FTC Holder Rule and the terms of the contract.

## Count VII

### Violations of New York General Business Law § 349
### by Marchese, 26 Motors, Kyle, Bailey, Chino, Manager, and Wells Fargo

158.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

159.    Under New York General Business Law ("GBL") § 349, deceptive acts or practices in the conduct of any business conducted in the State of New York are unlawful.

160.    Each of the deceptive acts and practices set forth herein constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

161.    To wit, wholly apart from any other violations of law recounted in this Complaint, the Dealership Defendants' acts and practices on behalf of themselves constitute violations of NYGBL § 349, which makes deceptive acts in the conduct of business, trade, commerce or the furnishing of a service in this state, unlawful, independent of whether these acts and practices constitute violations of any other law.

162.    These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

163.    Each of these actions was consumer-oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

164.    These false and deceptive consumer-oriented actions misrepresent the actual rights and obligations of consumers.

165.    26 Motors and Marchese's actions in inducing a consumer to purchase a car and then preparing forged loan documents and forging that consumer's signature to it, and submitting false and fabricated credit applications to finance companies, violated GBL § 349 by falsely and deceptively forcing loans on consumers without consent.

166.    26 Motors and Marchese have caused Plaintiff to suffer actual economic injury in the form of a loan to which he did not agree and which continues to affect his credit.

167.    By and through their acts, omissions, concealments, and misrepresentations, Defendants violated GBL § 349 with materially misleading and consumer-oriented deceptive acts and practices, with a broad impact on consumers at large, and have done so knowingly or willfully.

168.    As a direct and proximate result of 26 Motors and Marchese's deceptive acts and practices, committed in violation of GBL §349, Plaintiff was also

damaged in that he, among other things, suffered stress, anxiety, difficulty sleeping and loss of appetite, and suffered monetary damages as set forth above.

169.    Plaintiff claims all damages to which he is entitled arising from Defendants' violations of GBL § 349.

170.    Wells Fargo is liable for 26 Motors's and Marchese's violations of GBL § 349 pursuant to the FTC Holder Rule and the terms of the contract.

171.    Defendants' egregious acts justify the imposition of punitive damages.

## Count VIII

### Violations of N.Y. Gen. Bus. Law § 350 (False Advertising)

172.    Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

173.    Under NYGBL § 350, "false advertising" means:

> [A]dvertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

174.    The Dealership Defendants' oral and written representations of the Vehicles' prices, the costs and fees included within the ultimate price of the vehicle,

23

and the contents of the loan agreements and RICs were materially misleading and constitute false advertising pursuant to NYGBL § 350.

175.    The Dealership Defendants' false advertising – including its online advertising and the representations made to Plaintiffs at the dealership – were done knowingly and willfully and was committed in bad faith.

176.    As a result of these violations of NYGBL § 350, Plaintiff – who would not have purchased the Vehicles but for the Dealership Defendants' false advertising – suffered actual damages as set forth herein.

177.    For these reasons, Plaintiff is entitled to injunctive relief (enjoining the false advertising practices described above), actual damages as set forth herein, three times the actual damages up to $10,000, punitive damages, and reasonable attorneys' fees and costs.

178.    Wells Fargo is liable for 26 Motors's and Marchese's violations of GBL § 350 pursuant to the FTC Holder Rule and the terms of the contract.


## Count IX

### Aiding and Abetting by all Defendants

179.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

180.   All Defendants knew of the existence of the fraud and other illegal acts of the 26 Motors Defendants set forth above, and as set forth above, Defendants provided substantial assistance to advance the commission of the fraud and other illegal acts committed.

181.   Defendants provided substantial assistance as set forth above, specifically including, but not limited to authorizing and enabling the 26 Motors Defendants to place their name on the transaction documents as the seller, submitting credit applications with their own finance connections and portraying themselves as the seller.

182.   Defendants' actions described above were intentionally undertaken – that is, Marchese did not mistakenly tell the 26 Motors Defendants that they could use their financing connections and falsely tell the financing connections that Marchese were the sellers; they did not accidentally tell the 26 Motors Defendants that they could blatantly violate the New York Motor Vehicle Regulations and perjure themselves on the MV-50 forms.  Likewise, the 26 Motors Defendants did not mistakenly perjure themselves or lie to the finance companies in order to accessing the other dealership's credit contacts.

183.   As a direct and proximate result of Defendants' conspiracy, Plaintiff has been damaged as set forth above.

184.   Defendants' actions described above were undertaken in wanton, willful and reckless disregard to Plaintiff's rights.

25

185. Wells Fargo is liable for 26 Motors's and Marchese's actions pursuant to the FTC Holder Rule and the terms of the contract.

## Count IX

### Civil Conspiracy by all Defendants

186.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

187.    As taking the actions described above, Defendants entered into a mutual agreement for the 26 Motors Defendants to take the actions described.

188.    In taking the actions described above, Defendants conspired, acted in unison and concert together, mutually undertook, planned and otherwise took joint action to perpetrate a fraud and violate New York Motor Vehicle Regulatory laws.

189.    Defendants took overt acts in furtherance of the agreement as set forth above, specifically including, but not limited to authorizing and enabling the 26 Motors Defendants to place their name on the transaction documents as the seller, and submitting credit applications with their own finance connections portraying themselves as the seller.

190.    Defendants' actions described above were intentionally undertaken – that is, Marchese did not mistakenly tell the 26 Motors Defendants that they could use their financing connections and falsely tell the financing connections that Marchese were the sellers; they did not accidentally tell the 26 Motors Defendants

that they could blatantly violate the New York Motor Vehicle Regulations and perjure themselves on the MV-50 forms.  Likewise, the 26 Motors Defendants did not mistakenly perjure themselves or lie to the finance companies in order to access the other dealership's credit contacts.

191.    As a direct and proximate result of Defendants' conspiracy, Plaintiff has been damaged as set forth above.

192.    Defendants' actions described above were undertaken in wanton, willful and reckless disregard to Plaintiff's rights.

193. Wells Fargo is liable for 26 Motors's and Marchese's actions pursuant to the FTC Holder Rule and the terms of the contract.

## Prayer for Relief

**WHEREFORE**, plaintiff respectfully requests that this Court enter a Judgment:

1.    Declaring that Defendants' conduct complained of herein violates Plaintiff's rights;

2.    Directing Defendants to pay Plaintiff actual damages in an amount to be determined by a jury;

3.    Directing Defendants to pay Plaintiff statutory damages;

4.    Directing Defendants to pay Plaintiff civil penalties as provided under New York General Business Law §§ 349 and 350;

5.      Directing Defendants to pay Plaintiff punitive damages in an amount to be

determined by a jury;

6.      Enjoining Defendants from violating the laws and statutes violated here;

7.      Awarding Plaintiff reasonable attorney fees, costs, litigation expenses and

disbursements of this action; and

8.      Granting such other and further relief as this Court deems just and proper.

### Jury Demand

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff

demands a trial by jury in this action.

Dated:      New York, New York
            November 2, 2022

Respectfully submitted,
Bromberg Law Office, P.C.

By: /s/ *Brian L. Bromberg*
        Brian L. Bromberg
        One of Plaintiff's Attorneys

Attorneys for Plaintiff

Brian L. Bromberg
Bromberg Law Office, P.C.
352 Ruland Road, #1
Brooklyn, New York 11225
Tel: (212) 248-7906

Thomas R. Breeden
Thomas R. Breeden, P.C.
10326 Lomond Drive
Manassas, Virginia 20109
Tel: (703) 361-9277
To be admitted *pro hac vice*.