Exhibit C

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JESSICA GUZMAN, *on behalf of herself,*
*FLSA Collective Plaintiffs, and the Class*,

      Plaintiff,

26 MOTORS CORP.
      d/b/a 26 MOTORS
26 MOTORS QUEENS INC.
      d/b/a 26 MOTORS
26 MOTORS JAMAICA INC.
      d/b/a 26 MOTORS
26 MOTORS LONG ISLAND LLC
      d/b/a 26 MOTORS
26 MOTORS OF FRANKLIN SQUARE LLC
      d/b/a 26 MOTORS
MOSHE POURAD,
YOSEF AYZENCOT, and
AHARON BENHAMO

      Defendants.

---

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiff, JESSICA GUZMAN ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, 26 MOTORS CORP. d/b/a 26 MOTORS, 26 MOTORS QUEENS INC. d/b/a 26 MOTORS, 26 MOTORS JAMAICA INC. d/b/a 26 MOTORS, 26 MOTORS LONG ISLAND LLC d/b/a 26 MOTORS, 26 MOTORS OF FRANKLIN SQUARE

LLC d/b/a 26 MOTORS ("Corporate Defendants"), MOSHE POURAD, YOSEF AYZENCOT, and AHARON BENHAMO ("Individual Defendants," and together with Corporate Defendant, "Defendants") and states as follows:

## <u>INTRODUCTION</u>

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that she is entitled to recover from Defendants: (1) unpaid overtime, (2) unpaid overtime due to a fixed salary, (3) unpaid wages, including overtime, due to time-shaving, (4) liquidated damages and (5) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), she is entitled to recover from Defendants: (1) unpaid overtime, (2) unpaid overtime due to a fixed salary, (3) unpaid wages, including overtime, due to time-shaving, (4) statutory penalties, (5) liquidated damages and (6) attorneys' fees and costs.

3.      Plaintiff further alleges that she was retaliated against in violation of the FLSA and the NYLL and is entitled to recover from Defendants (1) compensatory damages, (2) punitive damages, and (3) attorneys' fees and costs thereof.

4.      Plaintiff further alleges that, pursuant to the New York State Human Rights Law, New York Executive Law §296 ("NYSHRL"), and the New York City Human Rights Law Administrative Code of the City of New York § 8-107 ("NYCHRL"), that she was deprived of her statutory rights as a result of Defendants' discriminating against her based on her pregnancy and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b),

28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law

claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

7.      Plaintiff JESSICA GUZMAN is a resident of Bronx County, New York.

8.      Defendants own and operate a chain of pre-owned 5-star car dealerships in New

York City under the trade name "26 Motors" at the following locations:

(a) 4015 Boston Road, Bronx. NY 10466 (26 Motors Bronx);

(b) 3981 Boston Road, Bronx. NY 10466 (26 Motors Bronx 2);

(c) 4055 Boston Road, Bronx. NY 10466 (26 Motors Bronx 3);

(d) 4077 Boston Road, Bronx. NY 10466 (26 Motors Bronx 4);

(e) 181-07 Jamaica Avenue, Hollis, NY, 11423 ("26 Motors Jamaica");

(f) 72-30 Queens Blvd., Woodside NY, 11377 ("26 Motors Queens);

(g) 1305 Hempstead Turnpike, Elmont, NY 11003 ("26 Motors Long Island");

(h) 707 Hempstead Turnpike, Franklin Square, NY, United States 11010 (26
    Motors Franklin Square")

9.      Corporate Defendant 26 MOTORS CORP. d/b/a 26 MOTORS is a domestic

business corporation organized under the laws of the State of New York, with a principal place

of business at 4015 Boston Road, Bronx. NY 10466, and an address for service of process

located at 3981 Boston Road, Bronx, NY, United States 10469. *See* **Exhibit 1**.

3

10.     Corporate Defendant 26 MOTORS JAMAICA INC. d/b/a 26 MOTORS is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 181-07 Jamaica Avenue, Hollis, NY, United States 11423. *See* **Exhibit 1.**

11.     Corporate Defendant 26 MOTORS QUEENS INC. d/b/a 26 MOTORS is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 72-30 Queens Blvd., Woodside NY, 11377, and an address for service of process located at 72-12 Queens Blvd., Woodside, NY, United States 11377. *See* **Exhibit 1**.

12.     Corporate Defendant 26 MOTORS LONG ISLAND LLC d/b/a 26 MOTORS is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business at 1305 Hempstead Turnpike, Elmont, NY 11003, and an address for service of process located at 707 Hempstead Turnpike, Franklin Square, NY, United States 11010. *See* **Exhibit 1**.

13.     Corporate Defendant 26 MOTORS FRANKLIN SQUARE LLC d/b/a 26 MOTORS is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 707 Hempstead Turnpike, Franklin Square, NY, United States 11010. *See* **Exhibit 1**.

14.     Individual Defendant MOSHE POURAD is a founder and co-owner of Corporate Defendants. **Exhibit 2; Exhibit 3**. MOSHE POURAD exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class members. MOSHE POURAD had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of

employment of Plaintiff, FLSA Collective Plaintiffs and Class members. At all times, employees of each of the three Businesses could complain to MOSHE POURAD directly regarding any of the terms of their employment, and MOSHE POURAD would have the authority to effect any changes to the quality and terms of employees' employment. MOSHE POURAD directly reprimanded any employee who did not perform his duties correctly. MOSHE POURAD exercised functional control over the business and financial operations of the Corporate Defendant.

15.     Individual Defendant YOSEF AYZENCOT is a founder and co-owner of Corporate Defendants. **Exhibit 2; Exhibit 3**. YOSEF AYZENCOT exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class members. YOSEF AYZENCOT had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class members. At all times, employees of each of the three Businesses could complain to YOSEF AYZENCOT directly regarding any of the terms of their employment, and YOSEF AYZENCOT would have the authority to effect any changes to the quality and terms of employees' employment. YOSEF AYZENCOT directly reprimanded any employee who did not perform his duties correctly. YOSEF AYZENCOT exercised functional control over the business and financial operations of the Corporate Defendant.

16.     Individual Defendant AHARON BENHAMO is a founder and co-owner of Corporate Defendants. **Exhibit 2; Exhibit 3**. AHARON BENHAMO exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class members. AHARON BENHAMO had and exercised the power and authority to (i) fire and

hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class members. At all times, employees of each of the three Businesses could complain to AHARON BENHAMO directly regarding any of the terms of their employment, and AHARON BENHAMO would have the authority to effect any changes to the quality and terms of employees' employment. AHARON BENHAMO directly reprimanded any employee who did not perform his duties correctly. AHARON BENHAMO exercised functional control over the business and financial operations of the Corporate Defendant.

17.    Corporate Defendants operate or operated the Restaurants as a single integrated enterprise, under the control of their owners, Individual Defendants MOSHE POURAD, YOSEF AYZENCOT, and AHARON BENHAMO. Individual Defendants MOSHE POURAD, YOSEF AYZENCOT, and AHARON BENHAMO own and operate each Corporate Defendant. Specifically, Corporate Defendants are engaged in related activities, share common ownership and have a common business purpose:

     (a) All the businesses share the trade name and trademark "26 Motors."

     (b) All the businesses are advertised on the website: https://www.26motors.com/. The website similarly contains links to each "26 Motors" individual website. **Exhibit 4**.

     (c) All the businesses are "certified pre-owned 5-star dealership whose primary focus is on luxury and exotic cars."

     (d) All the businesses utilize a central Human Resources Department.

     (e) All the businesses utilize the same employee handbook and policies.

(f) Employees are required to interchange between the locations as necessary. Specifically, Plaintiff observed managers and salesmen transfer between all of the locations.

(g) Furthermore, Plaintiff transferred between all of Defendants' locations in Bronx. Plaintiff was offered by Defendants to transfer and work at Defendants' other locations, including Queens, but Plaintiff declined due to travel difficulties.

18.    Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

19.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members were directly essential to the businesses operated by Defendants

## FLSA COLLECTIVE ACTION ALLEGATIONS

20.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including, but not limited to, mechanics, receptionists, sales representatives, business development center representatives, customer service representatives, and janitors) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

21.    At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to (i) pay them their lawful overtime premiums, (ii) pay them proper wages for all hours worked due

to time-shaving, and (iii) pay them their lawful overtime due to an improper fixed salary. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

22.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

23.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including, but not limited to, mechanics, receptionists, sales representatives, business development center representatives, customer service representatives, and janitors) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

24.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

25.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of

that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

26.      Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay overtime premiums, (ii) failing to pay overtime compensation due to an improper fixed salary, (ii) failing to pay proper wages, including overtime, due to a policy of time-shaving, (iii)  failing to provide proper wage statements per requirements of the New York Labor Law, and (iv) failing to provide proper wage and hour notices, at date of hiring and annually, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

27.      Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

28.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and

without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a)     Whether Defendants employed Plaintiff and Class members within the meaning of the New York law;

(b)     What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

(c)     At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class members for their work;

(d)     Whether Defendants properly notified Plaintiff and Class members of their regular hourly rate and overtime rate;

(e)     Whether Defendants paid Plaintiff and Class members the proper overtime compensation under the New York Labor Law;

(f)     Whether Defendants paid Plaintiff and Class members the proper wages for all hours worked under the New York Labor Law;

(g)     Whether Defendants improperly paid Plaintiff and Class members on a fixed salary basis;

(h)     Whether there was an agreement between the Defendants and Plaintiff and Class members that the fixed salary would cover all hours worked, including those in excess of forty (40);

(i)     Whether Defendants provided proper wage statements to Plaintiff and Class members per requirements of the New York Labor Law; and

**(j)**     Whether Defendants provided proper wage and hour notices to Plaintiff and Class members, at date of hiring and annually, per requirements of the New York Labor Law.

## STATEMENT OF FACTS

31.     In or about January 2022, to July 1, 2022, Plaintiff JESSICA GUZMAN was employed by Defendants as a customer representative at Defendants. On or around August 24, 2022, Plaintiff GUZMAN was re-hired by Defendants as a customer representative. Plaintiff is currently on maternity leave.

32.     Throughout her employment, Plaintiff worked from Sundays to Fridays, from 9:00 a.m. to 7:00 p.m.

33.     From the start of her employment to June 4, 2022, Plaintiff was compensated at a straight time rate of sixteen ($16) dollars per hour for all hours worked, including overtime hours in excess of forty (40). Starting on June 4, 2022, to July 1, 2022, and then from August 24, 2022 to the present, Plaintiff was compensated at a fixed salary of six hundred and fifty ($650) dollars per week. There was never any agreement with Plaintiff that such a fixed salary would cover her overtime hours in excess of forty (40).

34.     Throughout her employment, Plaintiff failed to receive her overtime premiums, due to being paid at a straight time rate. Similarly, FLSA Collective Plaintiffs and Class Members failed to receive their overtime premiums for hours worked in excess of forty (40).

35.     During her employment, while being compensated on a fixed salary basis, Plaintiff was not compensated with her overtime premiums for working hours in excess of forty (40) due to the fixed salary. Furthermore, there was never any agreement between Plaintiff and Defendants that this fixed salary would cover Plaintiff's overtime hours worked in excess of forty (40). Similarly, when FLSA Collective Plaintiffs and Class Members were compensated on a fixed salary basis, they too never had any agreement with Defendants that this fixed salary would cover overtime hours worked in excess of forty (40).

36.     Throughout her employment, Plaintiff had thirty (30) minutes deducted each day for a meal break. Approximately four (4) times per week, Plaintiff was unable to take a free and clear break because she was too busy with work. However, Defendants would still deduct these thirty (30) minutes anyway, regardless of whether Plaintiff was able to take a free and clear meal break. Similarly, FLSA Collective Plaintiffs and Class Members failed to receive

37.     The wage statements provided by Defendants to Plaintiff were fraudulent at all times as they failed to include any of the requisite information required by the NYLL. Furthermore, the wage statements failed to accurately reflect the actual number of hours that Plaintiff worked, Plaintiff's proper compensation, and any deductions. From the start of her employment until June 4, 2022, Plaintiff did not receive any overtime premiums as she was compensated at a straight time rate. Starting on June 4, 2022, to the end of her employment, Plaintiff was compensated at a fixed salary of $650 per week, with no overtime. Similarly, Class members failed to receive proper wage statements. See **Exhibit 5**.

38.     Plaintiff never received a proper wage and hour notice from the Defendants at hiring. Similarly, Class members never received proper wage and hour notices from Defendants.

39.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements and wage notices as required under New York Labor Law.

40.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature.  Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiffs' interest in ensuring proper pay.  Despite Defendants' conduct, there is a reason why the New York legislature concluded

that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380.  Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

41.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendants' conduct actually harmed Plaintiff and Class members. Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Class members' rights.  This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law.  Moreover, Defendants failure to provide wage notices allowed Defendants to hide the proper frequency of pay to employees.  Defendants' failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

42.     Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation.  The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiff and Class members.  This delayed payment caused Plaintiff to struggle to timely pay

bills.  Class members similarly struggle to timely pay debts due to Defendants continued attempts to hide wrongdoing from employees.

43.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Class members their proper overtime premiums due to paying employees at a straight time rate.

44.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Class members their proper overtime due to an improper fixed salary.

45.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Class members for all hours worked due to Defendants' policy of time-shaving.

46.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class members, in violation of the NYLL.

47.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to Plaintiff and Class members, at the beginning of employment and annually thereafter, in violation of the NYLL.

*Plaintiff GUZMAN's Discrimination Claims*

48.    In addition to the above, Plaintiff GUZMAN suffered from Defendants' discriminatory practices due to her pregnant status, as described below.

49.    Plaintiff GUZMAN was pregnant during her employment. Plaintiff was hired by Defendants while knowing that she was pregnant.

50.     Throughout her employment, during her pregnancy, Defendants refused to provide reasonable accommodations to Plaintiff in the form of time off from work to go to doctor's visits relating to her pregnancy.

51.     Specifically, Defendants refused to allow Plaintiff to take more than one (1) day off per week, even when she had multiple doctors appointments scheduled throughout the week.

52.     Rather than permit Plaintiff to take time off to attend the other doctors' appointments scheduled in a week, Defendants instead required Plaintiff to cancel the other appointments and re-schedule them to another week.

53.     By failing to provide reasonable accommodations to Plaintiff in light of her pregnant status, Defendants have discriminated against Plaintiff GUZMAN. Because of these discriminatory policies, Plaintiff GUZMAN has suffered from stress, anxiety, physical discomfort and emotional humiliation while working for Defendants.

*Plaintiff GUZMAN's Retaliation Claim*

54.     Plaintiff GUZMAN further alleges that Defendants retaliated against her.

55.     In anticipation of her maternity leave, Plaintiff had agreed upon a post-pregnancy plan with Defendants, whereby Defendants would permit Plaintiff to work remotely after her maternity leave concluded.

56.     As standard practice, Plaintiff's counsel sent a pre-litigation demand letter to Defendants, in an attempt to permit for pre-litigation resolution of the matter, advising Defendants that Plaintiff had claims against them for unpaid wages and discrimination.

57.     However, upon receipt of the demand letter, Defendants immediately called Plaintiff in for a meeting, where she was required to wait for two (2) hours, unpaid.

58.     At the meeting, Defendants informed her they would not permit her to take maternity leave, and that any prior arrangements were cancelled, and Plaintiff "was on her own" after her pregnancy.

59.     As a result, it is clear that Defendants retaliated against Plaintiff for the pre-litigation demand letter. But for notice of her potential lawsuit regarding her unpaid wages and discrimination, Plaintiff would have been permitted to take paid maternity leave and continued her employment via remote work during her post-pregnancy period.

60.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

61.     Plaintiff realleges and reavers Paragraphs 1 through 60 of this Class and Collective action Complaint as if fully set forth herein.

62.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

63.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

64.     At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

65.     At all relevant times, Defendants had a policy and practice of failing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek due to compensating Plaintiff and FLSA Collective Plaintiffs on a straight-time basis.

66.     At all relevant times, Defendants had a policy and practice of failing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek due to a fixed salary.

67.     At all relevant times, Defendants had a policy and practice of failing to pay proper wages to Plaintiff and FLSA Collective Plaintiffs due to Defendants' policy of time-shaving.

68.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs (i) the proper overtime premium of time and one-half for their hours worked in excess of forty (40) hours per week due to being paid at a straight time rate, (ii) the proper overtime premium of time and one-half for their hours worked in excess of forty (40) hours per week due to fixed salaries and (iii) their proper wages due to Defendants policy of time-shaving.

69.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

70.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

71.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime premiums, unpaid overtime due to fixed salary, unpaid wages due to time shaving, plus an equal amount as liquidated damages.

72.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

73.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

74.     Plaintiff realleges and reavers Paragraphs 1 through 73 of this Class and Collective Action Complaint as if fully set forth herein.

75.     At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

76.     Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

77.     Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the

regular rate of pay for each hour worked in excess of forty (40) hours in a workweek due to a fixed salary.

78.    Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them the proper compensation for all hours worked due to a policy of time-shaving.

79.    Defendants knowingly and willfully failed to provide proper wage and hour notices, at the date of hiring and annually thereafter, to Plaintiff and Class members, as required by New York Labor Law § 195(1).

80.    Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff and Class members with every wage payment, as required by New York Labor Law § 195(3).

81.    Due to Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid overtime premiums, unpaid overtime compensation due to a fixed salary, unpaid wages due to time shaving, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to New York Labor Law.

**COUNT III**

**<u>RETALIATION UNDER THE FAIR LABOR STANDARDS ACT</u>**

82.    Plaintiff realleges and reavers Paragraphs 1 through 81 of this Class and Collective Action Complaint as if fully set forth herein.

83.    At all relevant times, Plaintiff was an employee of Defendants within the meaning of the FLSA, and was a person covered by and intended to benefit from the provisions of the FLSA

20

84.     Section 15(a)(3) of the FLSA provides that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint […] under or related to this Act."

85.     As alleged herein, Plaintiff's counsel sent a pre-litigation demand letter to Defendants regarding Defendants improper wage and hour policies and discriminatory acts. In response to such complaints, Defendants cancelled all of the previously agreed maternity leave and remote working accommodations they had with Plaintiff, in violation of Section 15(a)(3).

## COUNT IV

## RETALIATION UNDER THE NEW YORK LABOR LAW

86.     Plaintiff realleges and reavers Paragraphs 1 through 85 of this Class Action Complaint as if fully set forth herein.

87.     Defendant willfully violated the New York Labor Law by retaliating against Plaintiff when they cancelled her paid maternity leave and continued remote employment during her post-pregnancy period, as a result of Plaintiff's pre-litigation demand letter.

88.     At all relevant times, Plaintiff was an employee of Defendants within the meaning of the NYLL, and was a person covered by and intended to benefit from the provisions of the NYLL

89.     Defendant's actions constituted a violation of Sections 215 of the NYLL.

90.     In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the

> employer has engaged in conduct that the employee,
> reasonably and in good faith, believes violates any
> provision of this chapter, or any order issued by the
> commissioner. . . .

91.     As a result of the pre-litigation demand letter, warning Defendants of an incoming lawsuit based on their illegal wage policies and discriminatory acts, Defendants retaliated against Plaintiff by terminating their agreements regarding Plaintiff's maternity leave and continued remote employment during her post-pregnancy period.

92.     Defendants' conduct was in willful disregard of the provisions of the NYLL.

93.     Plaintiff has suffered economic losses as well as emotional and mental distress as the result of Defendants' unlawful retaliation.

94.     Due to Defendants' retaliation, Plaintiff GUZMAN is entitled, pursuant to the NYLL, to recover from Defendant, compensatory damages, punitive damages, and all other penalties the Court deems appropriate.

## COUNT V

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW,

## ADMINISTRATIVE CODE OF THE CITY OF NEW YORK § 8-107 ("NYCHRL")

95.     Plaintiff realleges and reavers Paragraphs 1 through 94 of this Class and Collective Action Complaint as if fully set forth herein.

96.     At all relevant times, Plaintiff GUZMAN was an employee within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

97.     Defendants operated a business that discriminated against Plaintiff GUZMAN in violation of the NYCHRL by discriminating against Plaintiff with respect to the terms, conditions, and privileges of her employment due to her pregnancy by failing to reasonably

accommodate Plaintiff's reasonable requests for time-off to attend doctor's appointments related to her pregnancy.

98.     Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff GUZMAN's protected rights under the NYCHRL.

99.     As a result of Defendants' unlawful discriminatory practices, Plaintiff GUZMAN sustained injury, including economic damages and past and future physical and emotional distress.

100.    Due to Defendants' violations under the NYCHRL, based on discrimination on the basis of sexual orientation, Plaintiff GUZMAN is entitled to recover from Defendants: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorney's fees and costs.

## COUNT VI

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

101.    Plaintiff realleges and reavers Paragraphs 1 through 100 of this Class and Collective Action Complaint as if fully set forth herein.

102.    The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of pregnancy.

103.    Plaintiff GUZMAN was an employee and qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

104.    Defendants operated a business that discriminated against Plaintiff GUZMAN in violation of Section 296(1)(a) and 296(3)(a) with respect to the terms, conditions, and privileges of her employment because of her pregnancy status by failing to reasonably

accommodate Plaintiff's reasonable requests for time-off to attend doctor's appointments related to her pregnancy.

105.    Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff GUZMAN's protected rights under Section 296 of the NYSHRL.

106.    As a result of Defendants' unlawful discriminatory practices, Plaintiff GUZMAN sustained injury, including economic damages and past and future physical and emotional distress.

107.    Due to Defendants' violations under the NYSHRL, based on discrimination based on Plaintiff's pregnancy, Plaintiff GUZMAN is entitled to recover from Defendants: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA the NYLL, the NYSHRL, and the NYCHRL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid overtime premiums due under the FLSA and NYLL;

d.    An award of unpaid overtime compensation due to fixed salaries due under the FLSA and NYLL;

e.   An award of unpaid wages due under the FLSA and the NYLL, including those due to Defendants' time-shaving practices;

f.   An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

g.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages, including overtime compensation, pursuant to the FLSA;

h.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages, including overtime compensation, pursuant to the NYLL;

i.   An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j.   An award of damages for Defendants' retaliation;

k.   An award of backpay, compensatory damages, and punitive damages due under the NYSHRL;

l.   An award of backpay, compensatory damages, and punitive damages due under the NYCHRL;

m.   Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

n.   Designation of this action as a class action pursuant to F.R.C.P. 23;

o.   Designation of Plaintiff as Representative of the Class; and

p.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:    January 12, 2023

Respectfully submitted,

By:    /s/ C.K. Lee
C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10016
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

# EXHIBIT 1

# Department of State
## Division of Corporations

## Entity Information

[ Return to Results ]   [ Return to Search ]

### Entity Details

**ENTITY NAME:** 26 MOTORS CORP

**FOREIGN LEGAL NAME:**

**ENTITY TYPE:** DOMESTIC BUSINESS CORPORATION

**SECTIONOF LAW:** 402 BCL - BUSINESS CORPORATION LAW

**DATE OF INITIAL DOS FILING:** 12/09/2016

**EFFECTIVE DATE INITIAL FILING:** 12/09/2016

**FOREIGN FORMATION DATE:**

**COUNTY:** BRONX

**JURISDICTION:** NEW YORK, UNITED STATES

**DOS ID:** 5050566

**FICTITIOUS NAME:**

**DURATION DATE/LATEST DATE OF DISSOLUTION:**

**ENTITY STATUS:** ACTIVE

**REASON FOR STATUS:**

**INACTIVE DATE:**

**STATEMENT STATUS:** CURRENT

**NEXT STATEMENT DUE DATE:** 12/31/2022

**NFP CATEGORY:**

| ENTITY DISPLAY | NAME HISTORY | FILING HISTORY | MERGER HISTORY | ASSUMED NAME HISTORY |
|---|---|---|---|---|

#### Service of Process Name and Address

**Name:** DAYAN POURAD & YOSEF AYZENCOT

**Address:** 3981 BOSTON ROAD, BRONX, NY, UNITED STATES, 10469

#### Chief Executive Officer's Name and Address

**Name:** DAYAN POURAD & YOSEF AYZENCOT

**Address:** 3981 BOSTON ROAD, BRONX, NY, UNITED STATES, 10469

#### Principal Executive Office Address

**Address:** 3981 BOSTON ROAD, BRONX, NY, UNITED STATES, 10469

#### Registered Agent Name and Address

**Name:**

**Address:**

#### Entity Primary Location Name and Address

**Name:**

**Address:**

#### Farmcorpflag

**Is The Entity A Farm Corporation:** NO

## Stock Information

| Share Value | Number Of Shares | Value Per Share |
| --- | --- | --- |
| NO PAR VALUE | 200 | $0.00 |

# Department of State
## Division of Corporations

## Entity Information

[ Return to Results ]  [ Return to Search ]

### Entity Details ⌃

**ENTITY NAME:** 26 MOTORS OF FRANKLIN SQUARE LLC

**DOS ID:** 6552398

**FOREIGN LEGAL NAME:**

**FICTITIOUS NAME:**

**ENTITY TYPE:** DOMESTIC LIMITED LIABILITY COMPANY

**DURATION DATE/LATEST DATE OF DISSOLUTION:**

**SECTIONOF LAW:** LIMITED LIABILITY COMPANY LAW - 203 LIMITED LIABILITY COMPANY LAW - LIMITED LIABILITY COMPANY LAW

**ENTITY STATUS:** ACTIVE

**DATE OF INITIAL DOS FILING:** 08/01/2022

**REASON FOR STATUS:**

**EFFECTIVE DATE INITIAL FILING:** 08/01/2022

**INACTIVE DATE:**

**FOREIGN FORMATION DATE:**

**STATEMENT STATUS:** CURRENT

**COUNTY:** NASSAU

**NEXT STATEMENT DUE DATE:** 08/31/2024

**JURISDICTION:** NEW YORK, UNITED STATES

**NFP CATEGORY:**

| ENTITY DISPLAY | NAME HISTORY | FILING HISTORY | MERGER HISTORY | ASSUMED NAME HISTORY |

#### Service of Process Name and Address

**Name:** 26 MOTORS OF FRANKLIN SQUARE LLC

**Address:** 707 HEMPSTEAD TPKE, FRANKLIN SQUARE, NY, UNITED STATES, 11010

#### Chief Executive Officer's Name and Address

**Name:**

**Address:**

#### Principal Executive Office Address

**Address:**

#### Registered Agent Name and Address

**Name:**

**Address:**

#### Entity Primary Location Name and Address

**Name:**

**Address:**

#### Farmcorpflag

**Is The Entity A Farm Corporation:** NO

## Stock Information

| Share Value | Number Of Shares | Value Per Share |
| --- | --- | --- |

# Department of State
## Division of Corporations

## Entity Information

[ Return to Results ]  [ Return to Search ]

**Entity Details** ∧

| | |
|---|---|
| **ENTITY NAME:** 26 MOTORS JAMAICA INC | **DOS ID:** 5596462 |
| **FOREIGN LEGAL NAME:** | **FICTITIOUS NAME:** |
| **ENTITY TYPE:** DOMESTIC BUSINESS CORPORATION | **DURATION DATE/LATEST DATE OF DISSOLUTION:** |
| **SECTIONOF LAW:** 402 BCL - BUSINESS CORPORATION LAW | **ENTITY STATUS:** INACTIVE |
| **DATE OF INITIAL DOS FILING:** 07/31/2019 | **REASON FOR STATUS:** |
| **EFFECTIVE DATE INITIAL FILING:** 07/31/2019 | **INACTIVE DATE:** 09/11/2020 |
| **FOREIGN FORMATION DATE:** | **STATEMENT STATUS:** NOT REQUIRED |
| **COUNTY:** QUEENS | **NEXT STATEMENT DUE DATE:** 07/31/2021 |
| **JURISDICTION:** NEW YORK, UNITED STATES | **NFP CATEGORY:** |

| ENTITY DISPLAY | NAME HISTORY | FILING HISTORY | MERGER HISTORY | ASSUMED NAME HISTORY |
|---|---|---|---|---|

### Service of Process Name and Address

**Name:** 26 MOTORS JAMAICA INC

**Address:** 181-07 JAMAICA AVE, HOLLIS, NY, UNITED STATES, 11423

### Chief Executive Officer's Name and Address

**Name:**

**Address:**

### Principal Executive Office Address

**Address:**

### Registered Agent Name and Address

**Name:**

**Address:**

### Entity Primary Location Name and Address

**Name:**

**Address:**

### Farmcorpflag

**Is The Entity A Farm Corporation:** NO

## Stock Information

| Share Value | Number Of Shares | Value Per Share |
|---|---|---|
| NO PAR VALUE | 200 | $0.00 |

# Department of State
## Division of Corporations

## Entity Information

[Return to Results] [Return to Search]

### Entity Details

**ENTITY NAME:** 26 MOTORS LONG ISLAND LLC

**DOS ID:** 6205431

**FOREIGN LEGAL NAME:**

**FICTITIOUS NAME:**

**ENTITY TYPE:** DOMESTIC LIMITED LIABILITY COMPANY

**DURATION DATE/LATEST DATE OF DISSOLUTION:**

**SECTIONOF LAW:** LIMITED LIABILITY COMPANY LAW - 203 LIMITED LIABILITY COMPANY LAW - LIMITED LIABILITY COMPANY LAW

**ENTITY STATUS:** ACTIVE

**DATE OF INITIAL DOS FILING:** 06/23/2021

**REASON FOR STATUS:**

**EFFECTIVE DATE INITIAL FILING:** 06/23/2021

**INACTIVE DATE:**

**FOREIGN FORMATION DATE:**

**STATEMENT STATUS:** CURRENT

**COUNTY:** NASSAU

**NEXT STATEMENT DUE DATE:** 06/30/2023

**JURISDICTION:** NEW YORK, UNITED STATES

**NFP CATEGORY:**

| ENTITY DISPLAY | NAME HISTORY | FILING HISTORY | MERGER HISTORY | ASSUMED NAME HISTORY |
|---|---|---|---|---|

#### Service of Process Name and Address

**Name:** 26 MOTORS LONG ISLAND LLC

**Address:** 707 HEMPSTEAD TPKE, FRANKLIN SQUARE, NY, UNITED STATES, 11010

#### Chief Executive Officer's Name and Address

**Name:**

**Address:**

#### Principal Executive Office Address

**Address:**

#### Registered Agent Name and Address

**Name:**

**Address:**

#### Entity Primary Location Name and Address

**Name:**

**Address:**

#### Farmcorpflag

**Is The Entity A Farm Corporation:** NO

## Stock Information

| Share Value | Number Of Shares | Value Per Share |
| --- | --- | --- |

# Department of State
## Division of Corporations

## Entity Information

[Return to Results] [Return to Search]

### Entity Details

**ENTITY NAME:** 26 MOTORS QUEENS INC
**DOS ID:** 5596429

**FOREIGN LEGAL NAME:**
**FICTITIOUS NAME:**

**ENTITY TYPE:** DOMESTIC BUSINESS CORPORATION
**DURATION DATE/LATEST DATE OF DISSOLUTION:**

**SECTIONOF LAW:** 402 BCL - BUSINESS CORPORATION LAW
**ENTITY STATUS:** ACTIVE

**DATE OF INITIAL DOS FILING:** 07/31/2019
**REASON FOR STATUS:**

**EFFECTIVE DATE INITIAL FILING:** 07/31/2019
**INACTIVE DATE:**

**FOREIGN FORMATION DATE:**
**STATEMENT STATUS:** CURRENT

**COUNTY:** QUEENS
**NEXT STATEMENT DUE DATE:** 07/31/2023

**JURISDICTION:** NEW YORK, UNITED STATES
**NFP CATEGORY:**

| ENTITY DISPLAY | NAME HISTORY | FILING HISTORY | MERGER HISTORY | ASSUMED NAME HISTORY |
|---|---|---|---|---|

#### Service of Process Name and Address

**Name:** 26 MOTORS QUEENS INC

**Address:** 7212 QUEENS BLVD, WOODSIDE, NY, UNITED STATES, 11377

#### Chief Executive Officer's Name and Address

**Name:** YOSEF AYZENCOT

**Address:** 4015 BOSTON RD, BRONX, NY, UNITED STATES, 10466

#### Principal Executive Office Address

**Address:** 4015 BOSTON RD, BRONX, NY, UNITED STATES, 10466

#### Registered Agent Name and Address

**Name:**

**Address:**

#### Entity Primary Location Name and Address

**Name:**

**Address:**

#### Farmcorpflag

**Is The Entity A Farm Corporation:** NO

## Stock Information

| Share Value | Number Of Shares | Value Per Share |
| --- | --- | --- |
| NO PAR VALUE | 200 | $0.00 |

# EXHIBIT 2



Open in app    Get started

 Published in Authority Magazine

Authority Magazine    Follow

Jul 12 · 10 min read · ▶ Listen

🔖 Save    

# Moshe Pourad Of 26 Motors: Five Things I Learned As A Twenty-Something Founder

  



Open in app  Get started







Open in app    Get started

problem of every human; we all want more. If you are greedy, you will fail because it will cause hatred and trust issues within your business.

. . .

As a part of our series called "My Life as a TwentySomething Founder", I had the pleasure of interviewing Moshe Pourad.

Moshe understands first-hand the highs and lows of the car industry. Growing up, his father was a wholesale dealer who lost everything during the 2008 recession. After experiencing financial struggles, Moshe took the initiative to help support his family. As a teenager, he started working in the car business alongside his father. From washing cars, he moved up to sales and sold his first car at 15.

Moshe's early experience in the car business allowed him to view the industry from a fresh perspective, and he wanted to capitalize on its growth opportunities. So, after learning the basics and having a small shop of his own, he decided to transform how people shop for cars. His vision was to create the hottest dealership in New York despite all the doubters who told him it was impossible. Together with Aharon Benhamo and Yosef Ayzencot, they launched 26 Motors, and the rest is history. Moshe has since been the backbone of the business, helping expand the brand to multiple locations by working one-on-one with every department in the dealership.

. . .

**Thank you so much for joining us in this interview series! What is your "backstory"?**

I have always had a passion for cars. Growing up in Queens, New York, my father was a car wholesaler, and I constantly asked him about cars. He knew everything about cars, from their cost to their gas mileage; my dad was a car fanatic. So, my







Open in app | Get started

alone the money for food. So, while my dad was trying to dig us out of the hole we were in, I started working at 12 years old to help support my family. My first job was washing cars, and after being immersed in the car dealership industry, it only took me three years to sell my first car at the age of 15. From that moment, I knew exactly what I wanted to do with my life.

I rushed to finish my high school education, finishing 11th and 12th grade in the same year and receiving my advanced Regents diploma. However, after I graduated, I knew the traditional college route was not for me, as my mother was sick, and I needed to help keep my family from financial distress.

I decided to open my first store at 17 when I graduated high school. I took out a credit line on a floor plan for $600,000 and opened my 32-car auto dealership lot. During my first go around, I made many mistakes as there was a learning curve. I didn't know as much about owning and operating a business as I do today, but I knew a lot about cars. My dealership was open for three years before I opened another dealership that was much bigger and could hold approximately 80 cars. But I hit a rut and wanted out of the car business. I was tired of doing it alone, and there was too much pressure in the industry. Fortunately, that's when I met my new partners, Yosef Ayzencot and Aharon Benhamo, and together, we created 26 Motors.

26 Motors, a full-service pre-owned car dealership headquartered in the Bronx, New York, and we pride ourselves on putting the customer first.

**Can you share the funniest or most interesting story that happened to you since you started your company? What lessons or takeaways idd you take out of that story?**

When we started 26 Motors, we always wanted to stand out and be different. Earlier this month, we were in Times Square creating content for our social media platforms. We had a big photo shoot, right in the middle of Times Square, where we brought out all these luxury and pimped out cars. We stuck out like a sore thumb and definitely drew attention to ourselves with our cars.






Open in app    Get started

video. It takes a lot to stand out in New York — usually, pedestrians walk around like they're on a mission, ignoring what's going on around them. But this flashy car bouncing down the city streets really grabbed their attention. As they were watching us in the car, I was paying attention to their reactions. Everyone was smiling and laughing, amazed by the vehicle.

It reminded me of why we started 26 Motors in the first place, to be different and stand out from the status quo.

**What do you think makes your company stand out? Can you share a story?**

When we opened 26 Motors, we started selling affordable cars; however, I quickly saw the demand for luxury vehicles. So, we switched our business model and focused on selling luxury cars, and from there, our company started to grow as the demand for luxury cars increased. With time, we eventually acquired the largest selection of BMWs in the tri-state area. As a result, we had more BMWs than the BMW dealership had in stock. From there, we started acquiring Mercedes and went 50/50 with BMW and Mercedes, then quickly acquired more luxury vehicle brands to sell.

Our willingness to change our business model to match our consumer needs makes us stand out and gives us a competitive advantage. Apart from the business aspect, 26 Motors is changing the automotive experience in New York and beyond. We uphold the fundamental belief in transparency, always putting our customers first and refusing to play into the typical "tricks of the trade" that have tarnished consumers' view of car dealerships.

Our showroom features a lounge so clients can be as comfortable as possible. So, whether you're a celebrity client or an everyday person looking for reliable transportation, you get the whole red-carpet experience with confetti and fanfare when you sign the dotted line. We are not the same. It is that simple.

**None of us are able to achieve success without some help along the way. Is there a particular person who you are grateful towards who helped get you to where you are?**

 



Open in app | Get started

wholesale car dealership career and turned them into my successes. He painted a road map and set me up with the tools to succeed and become extraordinary at what I do.

To this day, my father will call me and try to give me advice, but most of the time, he is wrong with his old-school mentality, but he is a legend. He came to America with nothing and built a name for himself. His entrepreneurial journey is the epitome of building yourself from the ground up. Yes, he failed, but that is a part of the journey. Additionally, it wasn't his fault the economy crashed, but he returned and continued to persevere, ultimately making me who I am today.

**Are you working on any exciting projects now?**

We are looking to grow our business and locations and, soon, 26 Motors is expanding outside of New York, opening a dealership in Miami, Florida. It's exhilarating but also a big challenge.

We are looking forward to the expansion, but it's an entirely new area and market in which we have not invested. But it is an opportunity to learn how to do business in different cities and states and helps us prepare for expansion into other markets like Atlanta and California. The goal is to grow 26 Motors into 26 stores.

**How have you used your success to bring goodness to the world?**

My biggest mission in life is to help others, and 26 Motors gives me that platform. Starting from a business level, I give opportunities to those seeking a job as a place to start their career. I give consumers a second chance to buy a vehicle when other car dealerships have denied them due to bad credit. I believe in paying it forward and helping those around you.

I live by the expression keep your nose out of other people's business. Keep your head down and do the work, don't pay attention to what others are doing. You will be amazed at what you can accomplish and how much you can give back when you focus on yourself and your company.

 



Open in app          Get started

Honestly, I did not have time to read books. I was busy building my business. However, my experiences in the industry and building a business were alive; it was a raw, hands-on learning experience built with human interaction. It was physical human interaction that taught me everything.

You can only learn so much from a book. Yes, it might give you a guideline, but ultimately books try to instill the motivation for you to get up and go do the work. I believe it is better to talk, interact with people and teach them face to face how to do the job, complete the task, run your own business. Human interaction and fostering meaningful relationships are a way to connect with those in your industry to expand your network, and you can't be taught that or harbor those skills from a book.

**Can you share 5 of the most difficult and most rewarding parts of being a "TwentySomething founder". Please share an example or story for each.**

1. **You Must Be Willing to Make Sacrifices** — When starting your business, you have to be okay with missing family events, holidays, and social gatherings. You have to be okay spending time away from your family or kids. You must be willing to work 20-hour days and show up the next morning prepared to work again. When it comes to creating your own successful entrepreneurial story, there are no days off. You can't just say, "I want to be successful," to become successful, you have to be willing to make sacrifices to get you there.

2. **Be a Jack of all Trades** — As an owner of your own business, you must wear many hats. When it comes to business management and leading 150 employees, you must be a manager, a psychologist, a therapist, and a motivational speaker. You have to do anything and everything to instill trust in your employees. You have to create a work environment that your employees are excited to be a part of. As a company, 26 Motors is very hands-on because that is what it takes to create a successful company.

3. **Investing Helps Build Financially Security** — Money is a significant stressor when

      



Open in app   Get started

monthly income. Additionally, it adds long-term security because it is a long-term investment, meaning you can hold it for several years as you wait for it to appreciate.

4. **Put Your Trust in Others and They'll Put Their Trust in You** –Being the founder of your own company means you have to learn to trust people. You must have mutual trust and respect for your fellow C-Suite, your employees, and consumers. If you don't build a business off of trust, you will not be able to succeed. 26 Motors was built of trust and transparency for both employees and consumers. Having trust gives your company a competitive edge in the industry

**What are the main takeaways that you would advise a twenty year old who is looking to found a business?**

The main takeaway I would advise a twenty-year-old looking to be a founder is you have to be willing to put your blood, sweat, and tears into the company.

1. **Save Your Capital —** When you first get your big paycheck, don't blow it and buy name-brand materialistic items. The secret to wealth is to live like you are poor.

2. **Network with Others in Your Industry —** Reach out to the top business owners and founders in your industry. Ask them questions about how they built their success. The more you learn from those who have been in your shoes, the stronger you will be for it. It is also a great way to create connections and partnerships with those in your industry.

3. **Don't Let Greed Take Control —** Greed is the biggest problem of every human; we all want more. If you are greedy, you will fail because it will cause hatred and trust issues within your business.

4. **Sacrifice** –I heard this saying the other day, "If I change a lightbulb for you and I charge you $100, and it takes me 30 seconds, you're not paying for the 30 seconds; you're paying me for the ten years it took me to learn how to change a light bulb in 30 seconds." There is a lot we can do in the snap of a finger, but you are not paying






Open in app          Get started

**We are very blessed that some of the biggest names in Business, VC funding, Sports, and Entertainment read this column. Is there a person in the world, or in the US whom you would love to have a private breakfast or lunch with, and why? He or she might see this. :-)**

Not just one person, the list would be quite long. I would like to sit down with industry experts, C-suite executives, successful entrepreneurs and world leaders. I have learned that when you surround yourself with people who are more knowledgeable than you, you learn more. When you have the desire to learn, you make progress and build self-confidence to help you reach your next goals or milestones.

**What is the best way our readers can follow you on social media?**

Used car dealer in Bronx, Bronx, New Jersey, Queens, NY | 26 Motors Corp

(1) 26 Motors Corp. | Facebook

26 motors (@26motors) TikTok | Watch 26 motors's Newest TikTok Videos

26 Motors Corp (@26motors) • Instagram photos and videos

26 motors — YouTube

**This was very inspiring. Thank you so much for joining us!**



                    



Open in app

Get started




EXHIBIT 3



Contact          Login

 Back to Newsroom

# 26 Motor Corp Tackles the Used Car Shortage

Monday, January 17, 2022 3:15 PM

Topic: **Company Update**

Share this Article     

**BRONX, NY / ACCESSWIRE / January 17, 2022 /** Drivers are not just feeling pain at the gas pump these days - they are also seeing the prices of used cars soar and their availability drop. At the heart of the problem is the global shortage of the semiconductors that are used in the production of microchips for new cars. It has affected major car manufacturers, including Toyota, who in May 2021 announced that it would build 60,000-80,000 fewer vehicles in October 2021. As the assembly of new vehicles has slowed, the availability of used cars has dropped, with more people turning to them for their transportation needs or just holding on to their current vehicles until prices improve. It is a serious issue for the used car industry, and 26 Motors Corp, founded by Moshe Pourad, Yosef Ayzencot, and Aharon C. Benhamo, has stepped into the shortage with a plan they say is keeping the supply line open for its customers.







## The Coronavirus: The Origin of the Car Shortage

When COVID-19 introduced itself to the world in 2020, it caused problems across multiple industries, including cell phones and personal computers. These items had always been in demand, but as more people switched to working from home, their usage increased. With so many people buying them, companies could not keep pace with the demand,

The chips used in personal electronics are also used in new cars. When the recession hit, many car manufacturers canceled orders for the chips, believing that sales would plummet. While they did drop, they rebounded sooner and more strongly than had been expected. Manufacturers have not been able to keep up with the demand for new cars; thus, here we are today: a shortage that some believe may take several years to overcome.

With used cars remaining hard to find, especially those that are affordable, 26 Motors Corp created a way to continue to provide vehicles for its clients.

## How 26 Motors Corp Is Increasing the Availability of Used Cars in Its Area

The company states that when the chip shortage first began to impact the supply of used cars, it turned to the biggest wholesalers of cars in the United States. "We were fortunate that because we had already cultivated over ten years of relationships with them, we could rely on that goodwill to continue to receive cars for our lots."

26 Motors Corp also implemented a strong advertising campaign within the New York community, with the goal of helping consumers to understand how much their old car could potentially be worth as a trade-in. "This was especially important because so often, peop



they could potentially increase their down payment and make that car more affordable.

[26 Motors Corp](#) also took advantage of their exclusive membership with Mercedes Benz as on-demand customers, which gave the dealer first access to every Mercedes available for sale in the United States. "This allowed us to be first in line for a lot of excellent cars," the company says. "Likewise, we also were able to rely on our strong relationship with BMW Group Direct and with the other brands that we carry."

Implementing these steps, 26 Motors Corp, was the main reason they have been able to have more than 750 used cars in their inventory across their five locations.

### The History of 26 Motors Corp

26 Motor Corp, the largest independent used-car dealership in New York, was started in 2017 by Moshe Pourad, Yosef Ayzencot, and Aharon C. Benhamo. The company began as a small car lot with only 25 cars and quickly grew as the trip worked to modernize the dealership business and change the car-buying experience.

In kabalistic terms, the number 26 means "God's name"; therefore, the company's name literally means "God's Motors," and the men believe that without the blessing of God, they would be nothing.

### When Will the Car Shortage End?

The availability of new and used cars is not projected to significantly improve until sometime in [2022](#) or perhaps even beyond that. In the meantime, perhaps other used car dealerships can learn from 26 Motor Corp's approach as it continues to supply vehicles to the New York Community.

*For more information on 26 Motor Corp, please see its [website](#) or contact it at:*

*26 Motor Corp*

*(718) 231-2626*

*[26motorz@gmail.com](#)*





About          Services          News          Resources

Contact          Login

*Instagram:* <u>*https://www.instagram.com/26motors/*</u>

**SOURCE:** 26 Motor Corp

Topic:   Company Update

 **Back to Newsroom**

---



Drop us a line:

**888.952.4446**

Email:   **Sales**   **Editorial**

**Content licensing**

 

Copyright 2022 © ACCESSWIRE. All rights reserved. **Privacy Policy** | **Terms of Service** | **Responsible Disclosure Guidelines**

Email *

Join Newsletter



# EXHIBIT 4



## Our Locations



**26 MOTORS QUEENS**

72-30 QUEENS BLVD, QUEENS NY 11377

**(718)-831-2636**

**26 MOTORS JAMAICA**

181-07 JAMAICA AVENUE, HOLLIS NY 11423

**(718)-206-2626**

**26 MOTORS LONG ISLAND**

1305 HEMPSTEAD TURNPIKE, ELMONT NY 11003

**(516)-564-2626**

**26 MOTORS BRONX**

4015 BOSTON ROAD, BRONX NY, 10466

**(718)-231-2626**

**26 MOTORS MIAMI**

19275 NW 2ND AVE MIAMI, FL 33169

**(786) 320-5468**

Case 1:23-cv-09285-PAE Document 14-3 Filed 01/28/23 Page 57 of 77
Case 1:23-cv-09285-PAE Document 14-3 Filed 01/28/23 Page 57 of 77





# DRIVE WITH STYLE

**BECOME PART OF THE 26 MOTORS MOVEMENT WITH OUR STAINLESS STEEL
CAREFULLY DESIGNED KEYCHAINS.
INPIRED BY SIMPLICITY AND MADE FOR DURABILITY.
VEGAN LEATHER WITH ENGRAVED LOGO AND A EASY TWISTING CLASP.**

**SHOP**

## 26 Motors Corp - Luxury Car Dealership in NY

Welcome to 26 Motors Corp. We are a full service New York luxury car dealership located in Bronx serving the towns of Bronx County, Westchester NY, Queens NY, Long Island NY, New Jersey, Connecticut, Eastchester NY, Mt Vernon NY, Fort Lee NJ, Yonkers NY, Edgewater NJ, New Rochelle NY, Englewood NJ, Cliffside Park NJ, Palisades Park NJ, Tenafly NJ, Fairview NJ, Ridgefield NJ, Great Neck NY and Guttenberg NJ. We take pride in the quality leasing inventory that we carry that include Acura, Audi, BMW, Cadillac, Chevrolet, Dodge, Ford, Freightliner, GMC, Honda, Hyundai, INFINITI, Jeep, Kia, Lamborghini, Land Rover, Lexus, Maserati, Mazda, Mercedes-Benz, Mitsubishi, Nissan, Porsche, Ram, Subaru, Tesla, Toyota and Volkswagen. The cars, SUVs, minivans, trucks and pickups we carry are inspected and often may be eligible for the many extended service contracts & warranties we offer.

**More»**

All rights reserved. © 2003-2022
26 Motors Corp
Autofunds - Dealership Management Software







## 26 Motors Queens - Used car dealer in Woodside, NY

Welcome to 26 Motors Queens. We are a full service New York used car dealer located in Woodside serving the towns of Queens County, Long Island, New Jersey, Suffolk County, Nassau County, Guttenberg NJ, Weehawken NJ, West New York NY, Edgewater NJ, Cliffside Park NJ, Fairview NJ, Union City NJ, North Bergen NJ, Hoboken NJ, Fort Lee NJ, Ridgefield NJ, Palisades Park NJ, Secaucus NJ and Jersey City NJ. We take pride in the quality used inventory that we carry that include Acura, Audi, BMW, Chevrolet, Dodge, Ford, Genesis, GMC, Honda, Hyundai, INFINITI, Jeep, Kia, Land Rover, Lexus, Mazda, Mercedes-Benz, Mitsubishi, Nissan, Porsche, Ram and Toyota. The cars, SUVs, minivans, trucks and pickups we carry are inspected and often may be eligible for the many extended service contracts & warranties we offer.

More»

All rights reserved. © 2003-2022
26 Motors Queens
Autofunds - Dealership Management Software

Case 21-cv-09386-VSB   Document 44-3   Filed 04/28/23   Page 60 of 77

4015 Boston Road Bronx, NY 10466    Sales: 718-231-2626    Service: 718-231-2626    Parts: 718-231-2626

Search for Anything...

Search by make, model, etc.





## I KNOW WHAT I WANT

2008 (2)

Acura (10)

2 Series (1)

## I KNOW MY BUDGET

# Featured Brands

# Special Offers

Mercedes C-Class        Infiniti Q50        BMW 4-Series        Dodge Charger        Jeep Grand Cherokee

Find the luxury car of your dreams at the
best and lowest prices on the market.
Deals starting as low as $249 monthly

## Get Pre Approved



# THE BEST CAR BUYING EXPERIENCE

**26 Motors Bronx** - The Largest Independent Dealership in NY

Welcome to 26 Motors Bronx. We are a full service New York luxury car dealership located in Bronx serving New Rochelle, Yonkers, Englewood NJ and Newark NJ. We take pride in the quality leasing inventory that we carry that include Acura, Alfa Romeo, Audi, BMW, Chevrolet, Chrysler, Dodge, FIAT, Ford, Honda, INFINITI, Jeep, Kia, Land Rover, Lexus, Maserati, Mercedes-Benz, Nissan, Porsche, Shelby, smart and Toyota. The cars, SUVs, minivans, trucks and pickups we carry are inspected and often may be eligible for the many extended service contracts & warranties we offer.

We are a certified pre-owned 5-star dealership whose primary focus is on luxury and exotic cars. We have the largest variety of luxury cars with a range of standard, to exotic cars; Honda to Lamborghini. No matter what your budget is, we have something for you. Our lot has a varied range of Japanese, American, and European cars. All customers are welcome. We have rapidly expanded our business in just 4 years, looking to be the premier dealership on Boston Road. We have 3 locations in the Bronx and two locations in Queens.



 **Jeisson Baez** 

★★★★★

15 hours ago

This location has great variety of vehicles of your preference. Great costumer service. And Tim was helpful and nice. Highly recommended.

 **Rixx Vinn** 

★★★★★

16 hours ago

Highly recommended! Staffs were very nice & friendl service!



## Stay Connected

The official pages of
@26motors



Instagram (https://www.instagram.com/26motors/)



Youtube (https://www.youtube.com/watch?&v=TpUJMqa3UvA)



Facebook (https://www.facebook.com/26MOTORS)

Google

(https://maps.google.com/maps?ll=40.885034,-73.830374&z=16&t=m&hl=en&gl=US&mapclient=apiv3)ror (https://www.google.com/maps/@40.885034,-73.830374,16z/data=!10m1!1e1!12b1?source=apiv3&rapsrc=apiv3)

# Get Directions

**Your Street** *

**Your Zip Code** *

181-07 Jamaica Ave
Hollis, NY 11423 | Driving Directions

Search our inventory

 Recommend

Jamaica 26 Motors
www.26motorsjamaica.com | (718) 206-2626





We proudly sell these pre-owned brands



# DRIVE WITH STYLE

BECOME PART OF THE 26 MOTORS MOVEMENT WITH OUR
STAINLESS STEEL CAREFULLY DESIGNED KEYCHAINS.
INIPIRED BY SIMPLICITY AND MADE FOR DURABILITY.
VEGAN LEATHER WITH ENGRAVED LOGO AND A EASY TWISTING
CLASP.

SHOP

our inventory

apply for finance

dr    Text Us!        Chat with Us!



181-07 Jamaica Ave
Hollis, NY 11423 | Driving Directions

f Recommend **CARS**

Jamaica 26 Motors
www.26motorsjamaica.com | (718) 206-2626



‹

$24,950

**2018 BMW 4 Series Coupe**

430i Coupe | **42,105** miles

›

$29,950 $499 Monthly

**2019 Lexus IS F Sport**

IS 300 F SPORT AWD | **12,145** miles

$29,950 $486 Monthly

**2019 BMW 4 Series ///M Sport Pkg**

430i xDrive Gran Coupe | **38,026** miles



**Make**

| | | | | | |
|---|---|---|---|---|---|
| 2 Acura | 1 Cadillac | 4 Honda | 2 Land Rover | 2 Nissan | 1 Subaru |
| 1 Audi | 4 Chevrolet | 6 INFINITI | 4 Lexus | 1 Porsche | 2 Toyota |
| 16 BMW | 1 Dodge | 5 Jeep | 5 Mercedes-Benz | 3 Ram | |

## Jamaica 26 Motors - Used car dealer in Hollis, NY

Welcome to Jamaica 26 Motors. We are a full service New York used car dealer located in Hollis serving the towns of Queens County Elmont NY, Valley Stream NY, Woodmere NY, Floral Park NY, North Valley Stream NY, North New Hyde Park NY, New Hyde Park NY, Franklin Square NY, West Hempstead NY, Great Neck NY, Lynbrook NY, Garden City NY, Mineola NY, East Rockaway NY and Hempstead NY. We take pride in the quality used inventory that we carry that include Acura, Audi, BMW, Cadillac, Chevrolet, Dodge, Honda, INFINITI, Jeep, Land Rover, Lexus, Mercedes-Benz, Nissan, Porsche, Ram, Subaru and Toyota. The cars, SUVs, minivans, trucks and pickups we carry are inspected and often may be eligible for the many extended service contracts & warranties we offer. More»

Our finance department has relations with most banks and lending institutions in NY and will help you get a car loan at affordable payments. We provide sub-prime financing too and in most cases your credit history may not be a problem as you might think! At Jamaica 26 Motors, we believe you can get financed with good, bad or no credit history at all.

### Showroom Hours

| | | |
|---|---|---|
| Monday | 09:00 AM | 08:00 PM |
| Tuesday | 09:00 AM | 08:00 PM |
| Wednesday | 09:00 AM | 08:00 PM |
| Thursday | 09:00 AM | 08:00 PM |
| Friday | 09:00 AM | 04:00 PM |
| Saturday | Closed | |
| Sunday | 10:00 AM | 06:00 PM |

### Contact Us

### Driving directions

 Text Us!    Chat with Us!

**ABOUT JAMAICA 26 MOTORS**

About us

Case 2:23-cv-00283-RA Document 48-1 Filed 01/04/23 Page 69 of 77

**Our staff**

181-07 Jamaica Ave
Hollis, NY  11423 | Driving Directions

Jamaica 26 Motors
www.26motorsjamaica.com | (718) 206-2626

Contact us

Driving directions

Employment opportunities

Our warranties

JAMAICA 26 MOTORS INVENTORY TOOLS

View used cars

Featured used cars

Price reduced used cars

Used car finder

Used cars under $10,000

$10,000 to $15,000

$15,000 to $20,000

Used cars over $20,000

WWW.26MOTORSJAMAICA.COM

Vehicle inventory

Sitemap

Privacy policy

**JAMAICA 26 MOTORS**
181-07 Jamaica Ave
Hollis, NY 11423 | **Driving Directions**

Tel: **(718) 206-2626**

Fax: **(718) 206-2625**

All rights reserved. © 2003-2022
Jamaica 26 Motors
Autofunds - Dealership Management Software

Recently viewed (0)

Text Us!          Chat with Us!



# AUTHENTIC CARS AT AFFORDABLE PRICES

OUR INVENTORY 

APPLY FOR FINANCE 

FIND YOUR CAR 



# 26 MOTORS LONG ISLAND

**CLICK HERE**

# GET APPROVED

**APPLY FOR CREDIT NOW**

## Business Hours

Monday - Thursday 09:00 AM - 08:00 PM
Friday 09:00 AM - 06:00 PM
Saturday - Closed
Sunday - 10:00 AM - 05:00 PM

## Contact us

1305 Hempstead Tpke, ELMONT, NY 11003
Sales: (516) 564-2626
Fax: (516) 500-9371
Email: 26motorsli@gmail.com
Call or Text : (516) 550-3855

## 26 Motors Long Island - Luxury Car Dealership in NY

Welcome to 26 Motors Long Island. We are a full service New York luxury car dealership located in ELMONT serving the towns of Nassau County Floral Park NY, Elmont NY, Garden City NY, West Hempstead NY, New Hyde Park NY, North Valley Stream NY, North New Hyde Park NY, Hempstead NY, Valley Stream NY, Mineola NY, Lynbrook NY, Baldwin NY, Uniondale NY, East Rockaway NY Roosevelt NY. We take pride in the quality leasing inventory that we carry that include Audi, BMW, Cadillac, Dodge, Ford, GMC, Honda, INFINITI, Jeep, Kia, Land Rover, Lexus, Mercedes-Benz, Nissan, Ram, Subaru, Tesla and Toyota. The cars, SUVs, minivans, trucks and pickups we carry are inspected and often may be eligible for the many extended service contracts & warranties we offer.

**More›**

DRIVING DIRECTIONS




Autofunds - Dealership Management Software

# EXHIBIT 5

| CHECK | VENDOR | VENDOR NAME | | | CHECK DATE |
|---|---|---|---|---|---|
| 2956 | JESSICA | JESSICA RENAE GUZMAN | | | 3/14/2022 |

| INVOICE | INVOICE DATE | INVOICE AMOUNT | DISCOUNT | AMOUNT PAID | MEMO INFORMATION |
|---|---|---|---|---|---|
| | 3/14/2022 | 908.00 | .00 | 908.00 | PPWE 3/11 |

| | INVOICE TOTAL | DISCOUNT TOTAL | PAID TOTAL | CUSTOMER NUMBER |
|---|---|---|---|---|
| **REMITTANCE ADVICE** | 908.00 | .00 | 908.00 | |

SUPREME AUTOMOTIVE INC
4053 Boston Rd
Bronx, NY 10466

Reorder at supplies.deluxe.com

**ADDITIONAL INFORMATION - IF APPLICABLE**

| CHECK | VENDOR | | | CHECK DATE |
|---|---|---|---|---|
| 2981 | JESSICA | | | 3/28/2022 |

| INVOICE | INVOICE DATE | INVOICE AMOUNT | DISCOUNT | AMOUNT PAID | MEMO INFORMATION |
|---|---|---|---|---|---|
| | 3/28/2022 | 1170.00 | .00 | 1170.00 | PPWE 3/25 |

JESSICA RENAE GUZMAN — VENDOR NAME

| | | INVOICE TOTAL | DISCOUNT TOTAL | PAID TOTAL | CUSTOMER NUMBER |
|---|---|---|---|---|---|
| **REMITTANCE ADVICE** | | 1170.00 | .00 | 1170.00 | |

B_MCBW_RG

SUPREME AUTOMOTIVE INC

**26 MOTORS CORP**
DMV ACCOUNT
3981 BOSTON RD
BRONX, NEW YORK 10466

1567

1-1335/260

DATE 4/4/22

PAY TO THE ORDER OF Jessica Guzman

$ 898

Eight hundred ninty eight DOLLARS

**Metropolitan Commercial Bank**

FOR ppwe 4/1

⑈00⑈567⑈

1598

1-1335/260

**26 MOTORS CORP**
DMV ACCOUNT
3981 BOSTON RD
BRONX, NEW YORK 10466

DATE 4/11/22

$ 828 XX/XX

PAY TO THE ORDER OF  Jessica Guzman

Eight hundred twenty Eight

DOLLARS

Metropolitan
Commercial Bank

FOR  PPWE 4/11

⑈001598⑈